**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| KYLE PRITCHARD, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>APYX MEDICAL CORPORATION f/k/a BOVIE MEDICAL CORPORATION, and CHARLES D. GOODWIN,<br><br>        Defendants. | Case No. 8:19-cv-00919-SCB-AEP<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO REOPEN CASE AND FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. OVERVIEW OF THE LITIGATION .................................................................4

III. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...........................6

    A. Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class........................................................................8

    B. The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel ..................................................................9

    C. The Relief Provided for the Settlement Class is Adequate.............................11

        1. The Settlement Amount is Within the Range of Reasonableness........11

        2. The Costs, Risks, and Delay of Trial and Appeal................................12

        3. Other Factors Established by Rule 23(e)(2)(C) Support Preliminary Approval ..................................................................15

    D. All Settlement Class Members Are Treated Equitably...................................17

    E. The Remaining Eleventh Circuit Factors Strongly Support Preliminary Approval ..................................................................19

        1. The Stage of Proceedings at Which Settlement was Achieved ...........19

        2. Recommendation of Experienced Counsel Favors Preliminary Approval of the Settlement ................................................20

IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ...........................21

V. THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT CLASS NOTICE......................................................................23

    A. The Method of Notice is Adequate.................................................................23

    B. The Content of the Notice is Adequate...........................................................24

VI. PROPOSED SETTLEMENT SCHEDULE ...............................................................25

VII. CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

### CASES

*Atkinson v. Wal-Mart Stores, Inc.*,
 2011 WL 6846747 (M.D. Fla. Dec. 29, 2011)....................................................................17

*Bennett v. Behring Corp.*,
 737 F.2d 982 (11th Cir. 1984) ................................................................................ *passim*

*Bonner v. City of Prichard, Ala.*,
 661 F.2d 1206 (11th Cir. 1981) .......................................................................................19

*Carpenters Health & Welfare Fund v. The Coca-Cola Co.*,
 2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ................................................................13

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977) .........................................................................................20

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974).........................................................................................................23

*Exum v. Nat'l Tire & Battery*,
 2020 WL 1670997 (S.D. Fla. Apr. 6, 2020) ......................................................................7

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
 2017 WL 7798110 (S.D. Fla. Dec. 18, 2017)...................................................................17

*Francisco v. Numismatic Guar. Corp.*,
 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ...............................................................19, 20

*IBEW v. Int'l Game Tech., Inc.*,
 2012 WL 5199742 (D. Nev. Oct. 19, 2012) .....................................................................12

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
 298 F.R.D. 171 (S.D.N.Y. 2014) .....................................................................................24

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ..................................................................14

*In re Boston Sci. Corp. Sec. Litig.*,
 604 F. Supp. 2d 275 (D. Mass. 2009) ..............................................................................21

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ...............................................................17

*In re Catalina Mktg. Corp. Sec. Litig.*,
2007 WL 9723529 (M.D. Fla. July 9, 2007) ...................................................................19

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 654 (S.D. Fla. 2011)......................................................................................10

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...........................................................................12

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) .....................................................................................17, 18

*In re China Med. Corp. Sec. Litig.*,
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) .................................................................10

*In re Cigna Corp. Sec. Litig.*,
2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) .................................................................21

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ...........................................................................................19

*In re Healthsouth Corp. Sec. Litig.*,
334 F. App'x 248 (11th Cir. 2009) ..................................................................................17

*In re HealthSouth Corp. Sec. Litig*,
257 F.R.D. 260 (N.D. Ala. 2009)......................................................................................23

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................................13

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977) .........................................................................................24

*In re OCA, Inc. Sec. & Deriv. Litig.*,
2009 WL 512081 (E.D. La. Mar. 2, 2009) ...............................................................14, 20

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................................................13

*In re Recoton Corp. Sec. Litig.*,
248 F.R.D. 606 (M.D. Fla 2006) .....................................................................................21

*In re Scientific–Atlanta Inc. Sec. Litig.*,
 571 F.Supp.2d 1315 (N.D. Ga. 2007) ...................................................................................22

*In re Theragenics Corp. Sec. Litig.*,
 205 F.R.D. 687 (N.D. Ga. 2002) ...........................................................................................22

*In re U.S. Oil & Gas Litig.*,
 967 F.2d 489 (11th Cir. 1992) ................................................................................................6

*In re: Checking Account Overdraft Litig.*,
 2013 WL 11319392 (S.D. Fla. Aug. 5, 2013) .......................................................................12

*In re: Managed Care Litig. v. Aetna*,
 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) ......................................................................16

*Ingram v. The Coca-Cola Co.*,
 200 F.R.D. 685 (N.D. Ga. 2001) ...........................................................................................10

*Monroe Cty. Emps.' Ret. Sys. v. S. Co.*,
 332 F.R.D. 370 (N.D. Ga. 2019) ......................................................................................9, 22

*Morgan v. Public Storage*,
 301 F. Supp. 3d 1237 (S.D. Fla. 2016) ..................................................................................10

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
 315 F.R.D. 226 (E.D. Mich. 2016) ........................................................................................16

*Perez v. Asurion Corp.*,
 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..................................................................................20

*Reyes v. AT&T Mobility Servs., LLC*,
 2013 WL 12219252 (S.D. Fla. June 21, 2013) ......................................................................16

*Robbins v. Koger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997) .............................................................................................14

*Rooney v. EZCORP, Inc.*,
 330 F.R.D. 439 (W.D. Tex. 2019) .........................................................................................23

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
 297 F.R.D. 683 (S.D. Fla. 2014) ......................................................................................10, 11

*Smith v. Wm. Wrigley Jr. Co.*,
  2010 WL 2401149 (S.D. Fla. June 15, 2010) ................................................................6, 7

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005) ................................................................12

*Thorpe v. Walter Inv. Mgmt., Corp.*,
  2016 WL 4006661 (S.D. Fla. Mar. 16, 2016)................................................................21

*Trief v. Dun & Bradstreet Corp.*,
  840 F. Supp. 277 (S.D.N.Y. 1993) ................................................................15

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ................................................................19

*Vinh Nguyen v. Radient Phanrm Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................................19

*Warren v. City of Tampa*,
  693 F. Supp. 1051 (M.D. Fla. 1988)................................................................20

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) ................................................................17

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009) ................................................................22

**STATUTES**

15 U.S.C. §78u-4(a)................................................................19, 24

**RULES**

Fed. R. Civ. P. 23................................................................ *passim*

**OTHER AUTHORITIES**

Advisory Committee Notes to 2018 Amendments,
  324 F.R.D. 904................................................................7, 8

*Attorneys' Fees in Class Actions: 2009-2013*,
  92 N.Y.U. L. Rev. 937 (Oct. 2017)................................................................17

Court-appointed Lead Plaintiff Gregory P. Mouton and plaintiff Kyle Pritchard (collectively, "Plaintiffs"), by and through their undersigned counsel of record, respectfully submit this memorandum of law in support of their unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order").[1]

## I. INTRODUCTION

The Parties have reached an agreement to settle this Action in exchange for a $3,000,000 cash payment (the "Settlement Amount") to be made for the benefit of the Settlement Class. This is a favorable result for the Settlement Class, and it is both substantively and procedurally fair. Accordingly, the Court should enter the Preliminary Approval Order.

Substantively, Plaintiffs' damages expert estimates that if Plaintiffs overcame all of the obstacles to establishing liability, and completely prevailed on all of their loss causation and damages theories, the $3 million settlement would equate to approximately 16.4% of the total *maximum* damages *potentially* available in this Action. However, Defendants raised credible arguments that there were no actionable misstatements prior to March 13, 2019. If Defendants succeeded in arguing that they did not have a duty to disclose the study results prior to March 13, 2019, it would have drastically decreased the class period covered by the Action, and, as a result, would have also tremendously decreased the total amount of potential damages. In fact,

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 9, 2020 (the "Stipulation"), filed concurrently herewith as Exhibit 1 to the Declaration of Casey E. Sadler in Support of Motion to Reopen Case and for: (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice of the Settlement ("Sadler Decl.").

if Defendants had prevailed on these arguments, the total ***maximum*** damages available would be $3.6 million, in which case, the Settlement represents a recovery of approximately 83.3% of the Settlement Class's maximum damages. A recovery within the range of 16.4%-83.3% is well above the average recovery in similar situations. *See* Sadler Decl., Ex. 2 (2019 research finding a median recovery of approximately 12.8% of estimated damages in cases alleging losses of a similar magnitude and a median recovery of 4.8% overall in securities class actions).

Procedurally, the Settlement follows an all-day mediation before a highly experienced mediator and was negotiated by counsel that were well aware of the strengths and weaknesses of the case. Indeed, prior to reaching the Settlement, Lead Counsel conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things: (i) review and analysis of Apyx Medical Corporation's ("Apyx" or the "Company") filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, transcripts of Apyx investor calls, and other public statements made by Defendants prior to, during, and after the Settlement Class Period, as well as research reports prepared by securities and financial analysts regarding Apyx, and publicly available documents, reports, announcements, and news articles concerning Defendants; (ii) consultation with an expert in market efficiency, loss causation and damages; and (iii) consultation with an FDA expert with respect to FDA submission processes and practices. Lead Counsel also drafted two complaints in the Action, including the comprehensive and factually detailed 41-page Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") based on the foregoing investigation, and researched and drafted responses to Defendants' motion to dismiss and motion for leave to amend to file a reply in further support of their motion to dismiss.

Following the Court's denial of the motion to dismiss, Lead Counsel reviewed and analyzed Defendants' answer to the Complaint, drafted discovery requests, including interrogatories and requests for documents, and formulated a discovery plan for prosecuting the Action.

In preparation for the mediation, Lead Counsel drafted a detailed mediation statement addressing both liability and damages issues and, following the exchange of mediation statements with Defendants, reviewed and analyzed Defendants' arguments and supporting documentation. Lead Counsel subsequently engaged in an all-day mediation overseen by a highly respected mediator, Jed D. Melnick, Esq. of JAMS, which culminated in an agreement in principle to settle the Action. And, thereafter, engaged in negotiations regarding the terms of the proposed Settlement, and worked with damages experts to craft a plan of allocation that treats Plaintiffs and the proposed Settlement Class fairly. The Settlement is, therefore, the result of arm's-length negotiations, conducted by informed and experienced counsel, and does not favor Plaintiffs over other Settlement Class Members. In short, it is procedurally fair.

Entry of the Preliminary Approval Order will authorize dissemination of the Postcard Notice to investors who are believed to be Settlement Class Members. The Court will then hold a final approval hearing (the "Settlement Hearing") so the Parties and Settlement Class Members may present arguments and evidence for (or, in the case of any objections, against) the Settlement. The Court will then make a final determination as to whether the proposed Settlement is a fair, reasonable, and adequate resolution of this matter. To facilitate this process, the proposed Preliminary Approval Order will, among other things:

(i)  preliminarily approve the terms of the Settlement as set forth in the Stipulation;

(ii)  for purposes of effectuating the Settlement, certify a Settlement Class consisting of all persons and entities who or which, between December 21, 2018 and April 1, 2019,

inclusive, purchased or otherwise acquired Apyx Common Stock or Apyx Call Options, or sold Apyx Put Options, and were damaged thereby;[2]

(iii) approve the form and content of the Notice, Claim Form, Summary Notice and Postcard Notice, attached as Exhibits A-1, A-2, A-3 and A-4 to the Stipulation, respectively;

(iv) find that the schedule and procedures for distribution of the Postcard Notice, Notice and Claim Form, and publication of the Summary Notice, constitute the best notice practicable under the circumstances, and comply with the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

(v) set a schedule and procedures for: disseminating the Postcard Notice, posting the Notice and Claim Form on the settlement website, and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation, and/or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses; submitting papers in support of final approval of the Settlement; and setting the Settlement Hearing.

As discussed in greater detail below, Plaintiffs and Lead Counsel believe that the proposed Settlement meets the standards for preliminary approval and is in the best interests of the Settlement Class. Defendants do not oppose entry of the Preliminary Approval Order.[3]

## II.  OVERVIEW OF THE LITIGATION

On April 17, 2019, Plaintiff Kyle Pritchard filed the initial complaint in this Action, which alleged that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and that the Goodwin violated

---

[2] Excluded from the Settlement Class are Defendants; members of the Immediate Family of the Individual Defendant; the Officers and/or directors of Apyx; any person, firm, trust, corporation, Officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants; and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

[3] Defendants are Apyx and Apyx's Chief Executive Officer, Charles D. Goodwin ("Goodwin" or the "Individual Defendant").

Section 20(a) of the Exchange Act.  ECF No. 1.  Thereafter, on July 16, 2019, the Court appointed Mr. Mouton to serve as Lead Plaintiff, and approved his selection of Glancy Prongay & Murray LLP ("GPM") to serve as Lead Counsel and the Desmond Law Firm, P.C. ("Desmond Law") to serve as Liaison Counsel.  ECF No. 12.

On September 3, 2019, Plaintiffs filed and served the Complaint.  Like the initial complaint, the Complaint asserted violations of the Exchange Act.  Specifically, the Complaint alleges that Defendants made materially false and misleading statements about Apyx's investigational new device exemption study and the results thereof, which formed the basis of an important application submitted to the FDA, known as a 501(k) application.  The Complaint further alleges that, as a result of the alleged misrepresentations, the price of Apyx Common Stock and Call Options was artificially inflated, and that the price of Apyx Put Options was artificially deflated, between December 21, 2018 and April 1, 2019, inclusive (the "Settlement Class Period").  The price of Apyx Common Stock and Call Options declined, and the price of Apyx Put Options increased, when the truth was alleged to have been revealed.

On October 3, 2019, Defendants filed their motion to dismiss arguing, among other things, that Plaintiffs failed to: (i) allege an actionable misstatement because the statements were largely opinions or inactionable puffery; (ii) plead particularized facts giving rise to the requisite inference of scienter based on a lack of motive; and (iii) plead loss causation for the February 21, 2019 corrective disclosure.  ECF No. 30.  Plaintiffs filed their opposition to Defendants' motion to dismiss on November 4, 2019.  ECF No. 34.  On November 6, 2019, Defendants moved for leave to file a reply in further support of their motion to dismiss, which Plaintiffs opposed that same day.  ECF Nos. 37 & 38.  Then, on November 8, 2019, the Court

denied Defendants' motion for leave to file a reply.  ECF No. 39.

On March 11, 2020, the Court denied Defendants' motion to dismiss.  ECF No. 40. The Parties subsequently agreed to mediate on June 4, 2020 before Mr. Melnick of JAMS.  On May 1, 2020, Defendants filed and served their answer to the Complaint.  ECF No. 50.  In advance of the mediation session, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements and exhibits, which addressed, among other things, the issues of liability and damages.  On June 4, 2020, the Parties participated in a full-day mediation session before Mr. Melnick, which culminated in an agreement in principle to settle the Action for $3 million in cash.  During the following month, the Parties worked diligently to finalize the Settlement, which involved numerous complex terms and other issues that required substantial negotiation among the Parties.  The terms of the Settlement are memorialized in the Stipulation.

### III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires court approval for any settlement of a class action, and courts within this Circuit recognize that "public policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).[4]  In determining a settlement's fairness, the Court's judgment is informed by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  "Judicial review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). "In the first step of the process, a court should make a preliminary evaluation of the fairness

---

[4] All emphasis is added and all internal citations and quotations are omitted.

of the settlement before directing that notice be given to the settlement class." *Id.* "If the court grants preliminary approval, the second step of the process begins: notice is given to the class members of a final fairness hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Exum v. Nat'l Tire & Battery*, 2020 WL 1670997, at *2 (S.D. Fla. Apr. 6, 2020).

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." With respect to Rule 23(e)(2)— which governs final approval—courts now consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)   have the class representatives and class counsel adequately represented the class;

(B)   was the proposal negotiated at arm's-length;

(C)   is the relief provided for the class adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expect to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at 918. For this reason, the traditional factors that are utilized by courts in the Eleventh Circuit to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)), are still relevant. They are:

> "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement;[5] and (6) the stage of proceedings at which the settlement was achieved."

*Bennett*, 737 F.2d at 986.

In sum, although the specific factors by which a settlement is evaluated may have changed in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments (324 F.R.D. at 918).

### A. Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Here, there can be no dispute that Plaintiffs and Lead Counsel adequately represented the Settlement Class.

Plaintiffs' claims are typical of, and coextensive with, the claims of the Settlement Class, and they have no antagonistic interests. Indeed, Plaintiffs' interest in obtaining the

---

[5] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

largest possible recovery in this Action is aligned with the other Settlement Class Members. *See Monroe Cty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 379 (N.D. Ga. 2019) (finding adequacy where "[p]laintiffs' interests in establishing Defendants' liability and maximizing the recovery are aligned with the interests of absent Class members"). Plaintiffs have also contributed significantly to the Action by overseeing the litigation, communicating regularly with counsel, reviewing pleadings, producing documents to Lead Counsel with respect to their transactions in Apyx Securities, and participating in settlement discussions with Lead Counsel.

In addition, Plaintiffs retained counsel who are highly experienced in securities litigation (*see* ECF Nos. 6-5 & 6-6 (GPM and Desmond Law firm résumés, respectively)), and who have vigorously prosecuted Plaintiffs' claims. As set forth in detail above (Sec. I, *supra*), Lead Counsel, among other things: (i) conducted an extensive legal and factual investigation of Defendants and their alleged violations of the Exchange Act; (ii) drafted two complaints, including the comprehensive and factually detailed 41-page operative Complaint; (iii) successfully opposed Defendants' motion to dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery; (iv) identified, retained and worked with FDA, loss causation and damages experts; (v) drafted a mediation brief containing detailed analyses of the strengths, risks, and potential issues in the litigation and participated in a full-day mediation session overseen by a well-respected neutral; (vi) engaged in negotiations regarding the terms of the proposed Settlement; (vii) prepared the initial draft of the Stipulation and supporting documents; and (viii) worked with Plaintiffs' damages experts to craft a plan of allocation. Consequently, this factor supports preliminary approval.

> **B. The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel**

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." "The Court must consider whether there is any evidence the settlement was the product of collusion, by examining the negotiating process, to determine whether the compromise was the result of arms-length bargaining between the parties." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001). "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). "Moreover, the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016).

As noted above, the proposed Settlement was achieved only after an all-day mediation session—followed by additional arm's-length negotiations—overseen by a well-respected third-party mediator, Mr. Melnick. As part of those discussions, the Parties prepared submissions concerning, among other things, their respective views of the Action's merits and damages on a class-wide basis. The negotiations focused on heavily disputed issues, which were explored in-depth. Thus, "[t]here is no evidence that fraud or collusion affected the settlement in any respect." *Public Storage*, 301 F.Supp.3d at 1248. Accordingly, this factor weighs in favor of preliminary approval. *See In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive"); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011) (approving settlement that was "the product of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced

mediator").

### C. The Relief Provided for the Settlement Class is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).

### 1. The Settlement Amount is Within the Range of Reasonableness

The $3,000,000 non-reversionary Settlement Amount is well within the range of reasonableness to warrant preliminary approval.[6] Here, Plaintiffs' damages expert estimates that if Plaintiffs had ***fully prevailed*** at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' ***best case scenario***—the total ***maximum*** damages would be approximately $18.3 million. Thus, the $3,000,000 Settlement Amount represents approximately 16.4% of the total ***maximum*** damages ***potentially*** available.

Conversely, if Defendants' arguments regarding shortening the class period—which included Defendants' assertion that their statements prior to March 13, 2019 were true, inactionable opinions, constituted puffery and that they had no duty to disclose the study results—were accepted by the trier of fact, the maximum recoverable damages would have been drastically reduced to $3.6. Under such a scenario, the $3,000,000 recovery equates to

---

[6] Similarly, the second and third *Bennett* factors ask courts to consider the range of possible recovery and the point on or below the range of possible recovery at which settlement is fair, reasonable, and adequate. *Bennett*, 737 F.2d at 986. These factors are "easily combined." *Chase Bank*, 297 F.R.D. at 693.

approximately 83.3% of damages.[7]  A recovery within the range of 16.4%-83.3% is above the average recovery in similar situations.    *See* Ex. 2 (Cornerstone Report, "Securities Class Action Settlements 2019 Review and Analysis," at p. 6 Figure 5 (reporting median percentage of 2019 recoveries of 12.8% in cases alleging less than $25 million in damages, and 4.8% overall for all securities class actions)); *see also IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years").

In light of these risks, there can be no doubt that the Settlement Amount is well within the range of reasonableness, weighing in favor of preliminary approval.

### 2.      The Costs, Risks, and Delay of Trial and Appeal

In evaluating a settlement under Rule 23(e)(2)(C), courts also consider "the costs, risks, and delay of trial and appeal."[8]  The Court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement."  *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011)

---

[7] Additionally, Defendants would have argued that Plaintiffs would not have not been able to establish loss causation in connection with the decline in Apyx Securities following the February 21, 2019 analyst report.

[8] Similarly, the first and fourth *Bennett* factors look at "the likelihood of success at trial," and "the complexity, expense and duration of litigation," respectively.  *Bennett*, 737 F.2d at 986; *see also In re: Checking Account Overdraft Litig.*, 2013 WL 11319392, at *8 (S.D. Fla. Aug. 5, 2013) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").

(court need not determine if settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial.").

Here, there is no question that continued litigation would have been costly, risky, and protracted. Courts have repeatedly noted that "[s]tockholder litigation is notably difficult and notoriously uncertain." *Carpenters Health & Welfare Fund v. The Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008). Indeed, even though Plaintiffs prevailed at the motion to dismiss stage, Plaintiffs would still have to obtain class certification and ***prove*** their claims. Overcoming these hurdles would be no small task, and Plaintiffs and Lead Counsel recognized the significant risk, time, and expense involved in prosecuting Plaintiffs' claims through class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals.

As mentioned above, Defendants raised plausible arguments to class certification, and class certification was not a foregone conclusion. Had Plaintiffs failed to obtain class certification, or the proposed class period was truncated, the benefit to the Settlement Class would have been substantially reduced or eliminated. Moreover, assuming class certification was achieved, the Court could revisit certification at any time—presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks of obtaining and maintaining class certification support approval of the Settlement in this case. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009)

("the uncertainty surrounding class certification supports approval of the Settlement").

Furthermore, there was a substantial risk that Plaintiffs would be unable to prove their claims. Defendants deny their public statements contained any material misstatements or omissions and deny any and all allegations of fault, liability, wrongdoing, or damages, whatsoever. Although the Court denied many of Defendants' arguments at the pleading stage, Defendants would have continued to argue at summary judgment or trial that the evidence demonstrates that their public statements did not contain any material misstatements or omissions, that Plaintiffs could not have proven scienter, and that Plaintiffs and the Settlement Class suffered no damages. Thereafter, Plaintiffs would have to prevail on all of these issues at trial and prevail on the appeals that would likely follow. Any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years, with the ultimate outcome uncertain. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs).[9]

Finally, given, among other the things, the extensive discovery necessary to prove the case, and the significant expert testimony that would have been needed to establish liability, loss causation and damages, there is no doubt that continued prosecution of the Action would have been both time intensive and costly. *See In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at \*11 (E.D. La. Mar. 2, 2009) (noting continued litigation, including through discovery, class certification, trial and appeals, "would consume substantial judicial and

---

[9] *See also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

attorney time and resources, and avoiding such costs weighs in favor of settlement").

In sum, even if Plaintiffs prevailed after trial and appeals, there is no guarantee that they would have obtained a judgment greater than the $3 million Settlement. There was, as in any securities action, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members."). By contrast, the Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk, delay, and expense of continued litigation.

### 3. Other Factors Established by Rule 23(e)(2)(C) Support Preliminary Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports the Settlement's approval or is neutral.

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS")—the Claims Administrator selected by Lead Counsel subject to Court approval—will process claims under the guidance

of Lead Counsel, provide claimants with an opportunity to cure any deficiency in their claim or request review of any denial of their claim, and, ultimately, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation, after submission and Court-approval of Plaintiffs' distribution motion.  This type of claims processing is standard in securities class action settlements and it is effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[10]  *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 242 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

Second, as disclosed in the Notice, Lead Counsel will apply for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for their services rendered on behalf of the Settlement Class.  A proposed attorneys' fees of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  *See, e.g.*, *Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit."); *In re: Managed Care Litig. v. Aetna*, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of $100 million settlement); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33⅓%

---

[10] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Ex. 1 (Stipulation ¶15).

of settlement of over $30 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (affirming 33⅓% award of $40 million).[11]

Third, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of the Company's common stock, request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (granting final approval of class action settlement and observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

### D. All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D); *see also In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (standard for approval of a plan of allocation is the same as approving a settlement: whether it is "fair, adequate and reasonable

---

[11] *See also* Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (Oct. 2017) (finding that, over a four year period, the mean fee award in the Eleventh Circuit was 30% and the median award was 33%); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (awarding 35% of $25 million and stating, "[c]ourts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund") (citing cases); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *7 (M.D. Fla. Dec. 29, 2011) (awarding "customary fee" of 33.3% of $2,020,000).

and is not the product of collusion between the parties.").

Here, the proposed Plan of Allocation, which was developed by Plaintiffs' damages experts in consultation with Lead Counsel, is set forth in the Notice, and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* Ex. A-1 to Exhibit 1 (the Stipulation) at pp. 13-22. Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss amount for each Settlement Class Member's Settlement Class Period transactions. *Id.*

The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when the Apyx Securities were purchased and sold, the type of Apyx Securities purchased or sold, the purchase and sale price of the Apyx Securities, the relative strength of the claims asserted, and with respect to Apyx Common Stock, the estimated artificial inflation in the price of the stock at the time of purchase or sale. The Net Settlement Fund will be allocated to Authorized Claimants—including Plaintiffs—on a *pro rata* basis based on the type of security (*i.e.*, common stock or option) and the relative size of their Recognized Loss(es).[12] Similar plans have repeatedly been approved by courts in class action securities settlements.[13] *See,*

---

[12] For Apyx Common Stock and Apyx Call Options acquired during period December 21, 2018 through March 13, 2019, inclusive, and Apyx Put Options sold during period December 21, 2018 through March 13, 2019, inclusive, the Recognized Loss is discounted by 25% to reflect Lead Counsel's assessment of the probability of successful recovery in view of Defendants' legal arguments that the statements prior to March 13, 2019 were not actionable because they were statements of opinion and there was no duty to disclose the information at issue. *See* Ex. A-1 to Exhibit 1 (the Stipulation) at p. 15, n.3.

[13] The Plan of Allocation limits aggregate payments to options holders to 5.0% of the Net Settlement Fund because options holders' total estimated damages account for less than 5.0% of the total aggregate of damages to all Settlement Class Members. *See* Ex. A-1 to Exhibit 1

*e.g., In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (M.D. Fla. July 9, 2007) ("Although the plan of allocation benefits some members of the class differently, it was developed to fairly account for the relative strength of individual claims and the timing of the relevant securities purchases."); *Vinh Nguyen v. Radient Phanrm Corp.,* 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).[14]

> ### E. The Remaining Eleventh Circuit Factors Strongly Support Preliminary Approval

> #### 1. The Stage of Proceedings at Which Settlement was Achieved

Courts also consider "the stage of proceedings at which settlement was achieved." *Bennett,* 737 F.2d at 986. In weighing this *Bennett* factor, a Court should focus on whether "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation," and not the extent to which formal discovery was conducted. *Francisco v. Numismatic Guar. Corp.*, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008). "[F]ormal discovery [is not] a necessary ticket to the bargaining table" (*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)), and courts have rejected the notion that such discovery must take place.[15] *See, e.g.*, *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (affirming approval of securities class action settlement where there had been no "formal discovery" but "class counsel had conducted

---

(the Stipulation) at p.18, ¶59.

[14] Pursuant to the PSLRA, Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class. *See* 15 U.S.C. §78u-4(a)(4).

[15] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

informal discovery by hiring private investigators and experts").

Here, "[b]ecause the PSLRA prohibits formal discovery during the pendency of any motion to dismiss, the parties were prohibited from engaging in formal discovery until the Court ruled on defendants' motion to dismiss. ..." *OCA*, 2009 WL 512081, at \*12. Nevertheless, as discussed in detail above, Plaintiffs and their counsel obtained a comprehensive understanding of the strengths and weaknesses of the case and had sufficient information to make an informed decision regarding the fairness of the Settlement. Consequently, "[Lead] Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation." *Numismatic Guaranty Corp.*, 2008 WL 649124, at \*11.

### 2. Recommendation of Experienced Counsel Favors Preliminary Approval of the Settlement

In determining whether the proposed Settlement is fair, reasonable, and adequate, the Court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *accord Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007). Here, Lead Counsel "are capable attorneys with experience in litigation of this nature," and "there is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement." *Id*. Accordingly, this factor favors preliminary approval. *See Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988) (giving "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.").

**IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

Class actions may be certified for the purpose of settlement as long as the class meets the certification requirements under Rule 23. Such is the case here.[16]

First, numerosity is satisfied under Rule 23(a)(1) because there are likely thousands of Settlement Class Members. ECF No. 29, ¶86 (millions of Apyx shares were publicly traded during the Settlement Class Period on the NYSE and the Nasdaq). Thus, the Settlement Class is likely so large that joinder of all class members is impracticable. *Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *6 (S.D. Fla. Mar. 16, 2016) (numerosity satisfied where 3.13 million shares were traded on a weekly basis); *In re Cigna Corp. Sec. Litig.*, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006) (courts have "recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security.").

Second, commonality is satisfied under Rule 23(a)(2) because the Action raises numerous common questions of law and fact. These include "whether defendants made material misleading statements or omissions, whether defendants acted with the requisite scienter, and whether the proposed class is entitled to a presumption of reliance under the fraud-on-the-market theory." *In re Boston Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 281 (D. Mass. 2009); *see also In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 618 (M.D. Fla 2006) (commonality satisfied where "a plaintiff alleges that there is a common scheme of deceptive conduct to defraud investors").

Third, typicality is satisfied under Rule 23(a)(3) because Plaintiffs' claims and those of

---

[16] Defendants do not object to certification of the Settlement Class for settlement purposes only. Defendants have reserved all of their rights to challenge certification if the Settlement does not become Final.

the Settlement Class arise from the same events and alleged misconduct, and are based on the same legal theories. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) ("the typicality requirement may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories.").

Fourth, as set forth above, adequacy is satisfied under Rule 23(a)(4) because "[p]laintiffs' interest in establishing Defendants' liability and maximizing the recovery are aligned with the interests of the absent Class members." *Monroe*, 332 F.R.D. at 379. Moreover, Plaintiffs have retained counsel experienced in class action securities litigation, who have vigorously pursued the Action on their behalf. *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 696 (N.D. Ga. 2002) ("The standard involves inquiry into questions of whether Plaintiffs' counsel are qualified, experienced and generally able to conduct the litigation."). Thus, Plaintiffs have demonstrated that they and their counsel will fairly and adequately protect the Settlement Class.

The Fed. R. Civ. P. 23(b)(3) requirements of predominance and superiority are likewise satisfied. Questions common to all Settlement Class Members predominate over questions affecting individual Settlement Class Members because the elements of Plaintiffs' claims (*i.e.*, §§10(b) and 20(a) of the Exchange Act and Rule 10b–5) are all "susceptible to class-wide proof." *In re Scientific–Atlanta Inc. Sec. Litig.*, 571 F.Supp.2d 1315, 1336 (N.D. Ga. 2007). Indeed, "[a] finding to the contrary would be inconsistent with the overwhelming majority of the published decisions in this area." *In re Theragenics*, 205 F.R.D. at 697.

Finally, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[I]ndividual class members have

little interest in controlling the prosecution because the cost of bringing individual suits to seek recovery would in most cases outweigh the recovery obtained"; "this forum is as desirable a forum as any given the geographic dispersal of investors and [Apyx's] headquarters in [Clearwater, Florida]"; and given that a settlement has been reached, "this putative class action presents no likely management difficulties." *See Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 451-52 (W.D. Tex. 2019); *see also In re HealthSouth Corp. Sec. Litig*, 257 F.R.D. 260, 284 (N.D. Ala. 2009) ("As a general rule, class action treatment presents a superior method for the fair and efficient resolution of securities fraud cases.").

Class certification for the purposes of settlement is, therefore, appropriate.

## V. THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT CLASS NOTICE

### A. The Method of Notice is Adequate

For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

Here, Lead Counsel propose to send, by first-class mail, individual copies of the Postcard Notice (Exhibit A-4 to Exhibit 1 (the Stipulation)) to all potential Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock. Contemporaneously with the mailing of the Postcard Notice, copies of the Notice (Exhibit A-1 to Exhibit 1 (the Stipulation)) and the Claim Form (Exhibit A-2 to Exhibit 1 (the Stipulation)) will be posted on a website to be developed for the Settlement. From this website, potential

Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form. No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Exhibit A-3 to Exhibit 1 (the Stipulation)) will also be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

In securities class actions, it is "more than sufficient" to use "a combination of a mailed post card directing class members to a more detailed online notice." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (collecting cases).

### B. The Content of the Notice is Adequate

The proposed notice program also satisfies the requirements of Rule 23(c)(2) by setting forth: (i) the nature of the action; (ii) the Settlement Class definition; (iii) a description of the claims and defenses; (iv) the ability of Settlement Class Members to enter an appearance through counsel; (v) the Settlement Class Member's ability to be excluded from the Settlement Class; and (vi) the binding effect of a Settlement Class judgment. Additionally, the notice program satisfies the PSLRA's requirements, 15 U.S.C. § 78u-4(a)(7), by setting forth: (i) a cover page summarizing the Notice information; (ii) a statement of plaintiff recovery, and the estimated recovery per damaged share; (iii) a statement of potential outcomes of the case; (iv) a statement of attorneys' fees or costs sought; (v) contact information for counsel; and (vi) the reasons for settlement. Finally, the notice program will provide the date, time, and location of the Settlement Hearing and the process for submitting an objection to the Settlement.

Based on the foregoing, Plaintiffs respectfully request that the Court approve the form and content of the proposed notice program. *See In re Nissan Motor Corp. Antitrust Litig.*,

552 F.2d 1088, 1104–05 (5th Cir. 1977) (notice must contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.").

## VI.  PROPOSED SETTLEMENT SCHEDULE

Plaintiffs respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for mailing the Postcard Notice and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | 20 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice | 10 business days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for requesting exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Fairness Hearing | At least 100 days after entry of the Preliminary Approval Order |
| Deadline for submitting Claim Forms | Postmarked 120 days from the Notice Date |

## VII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement and enter the proposed Order.

Dated: July 10, 2020                     Respectfully submitted,


                                        */s/ Casey E. Sadler*
                                        Robert V. Prongay
                                        Casey E. Sadler (*pro hac vice*)
                                        Pavithra Rajesh
                                        **GLANCY PRONGAY & MURRAY**
                                        1925 Century Park East, Suite 2100
                                        Los Angeles, California 90067
                                        Telephone: (310) 201-9150
                                        Facsimile: (310) 201-9160
                                        Email: rprongay@glancylaw.com
                                                csadler@glancylaw.com
                                                prajesh@glancylaw.com

                                        *Lead Counsel for the Settlement Class*

                                        *-and-*

                                        Leo W. Desmond, Esquire
                                        Florida Bar Number 0041920
                                        **DESMOND LAW FIRM, P.C.**
                                        5070 Highway A1A, Suite D
                                        Vero Beach, Florida 32963
                                        Telephone: (772) 231-9600
                                        Facsimile: (772) 231-0300
                                        Email: lwd@desmondlawfirm.com

                                        *Liaison Counsel for the Settlement Class*

**CERTIFICATE OF SERVICE**

The undersigned counsel for Plaintiffs hereby certifies that on July 10, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this matter.

Dated: July 10, 2020

*/s/ Casey E. Sadler*
Casey E. Sadler