**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| KYLE PRITCHARD, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   v.<br><br>APYX MEDICAL CORPORATION f/k/a BOVIE MEDICAL CORPORATION, and CHARLES D. GOODWIN,<br><br>        Defendants. | Case No. 8:19-cv-00919-SCB-AEP<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION EXPENSES**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS'
        FEES FROM THE $3,000,000 SETTLEMENT FUND ............................................ 3

III.    A FEE AWARD OF 33⅓% OF THE SETTLEMENT FUND IS FAIR AND
        REASONABLE IN THIS CASE.............................................................................. 5

        A.      The Requested 33⅓% Fee Is Reasonable Under the *Camden I* Factors........... 5

                1.      The Time and Labor Expended by Lead Counsel Supports the
                        Requested Fee ...................................................................................... 5

                2.      The Novelty and Difficulty of the Issues Involved.............................. 8

                3.      The Skill Required to Perform the Legal Service Adequately and the
                        Experience, Reputation, and Ability of the Attorneys........................ 12

                4.      The Preclusion of Other Employment ................................................ 13

                5.      The Requested Fee is Customary for A Case Such as This One ........ 13

                6.      Lead Counsel Assumed Substantial Risk and Pursued This Case on a
                        Pure Contingency Basis ...................................................................... 14

                7.      Time Limitations Imposed by the Client or the Circumstances ......... 15

                8.      The Amount Involved and Results Obtained....................................... 15

                9.      The Undesirability of the Case ........................................................... 16

                10.     Nature and Length of the Professional Relationship with the Client.. 18

                11.     Awards in Similar Cases Support a Fee Award of 33⅓% of the
                        Settlement Fund .................................................................................. 19

                12.     Plaintiffs Have Approved the Requested Fee ..................................... 20

                13.     The Settlement Class's Reaction Also Supports the Requested Fee .. 21

IV.    THE LITIGATION EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ...................................... 21

V.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES PURSUANT TO THE PSLRA ............................................................... 23

VI.    CONCLUSION ........................................................................................................ 24

# TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ................................................................................... 1

*Allapattah Servs., Inc. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................... 4

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ................................................................................................ 3

*Barnhill v. In re Florida Microsoft Anti-Trust Litigation*,
   905 So.2d 195 (Fla. 3d DCA 2005) ....................................................................... 8

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988) ..................................................................... 14, 22

*Bell v. Pension Committee of ATH Holding Co., LLC*,
   2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ......................................................... 3

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................................ 3

*Brenowitz v. Implant Seminars, Inc.*,
   2017 WL 3438879 (S.D. Fla. Aug. 10, 2017) ....................................................... 8

*Cabot East Broward 2 LLC v. Cabot*,
   2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) .................................................... 5, 20

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ......................................................................*passim*

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................................................... 10

*Clark v. Lomas & Nettleton Fin. Corp.*,
   79 F.R.D. 641 (N.D. Tex. 1978) ............................................................................ 8

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ......................................... 8, 12, 20, 21

*David v. Am. Suzuki Motor Corp.*,
   2010 WL 1628362 (S.D. Fla. April 15, 2010) ..................................................................... 12

*Dial Corp. v. News Corp.*,
   317 F.R.D. 426 (S.D.N.Y. 2016) ....................................................................................... 18

*Dowdell v. City of Apopka*,
   698 F.2d 1181 (11th Cir. 1983).......................................................................................... 22

*Elkins v. Equitable Life Ins. of Iowa*,
   1998 WL 133741 (M.D. Fla. Jan. 27, 1998) ......................................................................... 8

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   2017 WL 7798110 (S.D. Fla.  Dec. 18, 2017) ......................................................... 13, 19, 20

*Fishoff v. Coty Inc.*,
   2010 WL 305358 (S.D.N.Y. Jan. 25, 2010)......................................................................... 10

*Garst v. Franklin Life Ins. Co.*,
    1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999) ..................................................... 4

*Gevaerts v. TD Bank*,
   2015 WL 6751061 (S.D. Fla. Nov. 5 2015)......................................................................... 22

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015)............................................................................................. 15

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
   2019 WL 2249941 (S.D. Fla. May 24, 2019) ..................................................................... 19

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ......................................................................................................... 15

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ..................................................................... 15

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011)............................................................................ 5, 16

*In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) .................................................................................. 17

*In re Enron Corp.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ................................................................................. 7

iv

*In re Flowers Foods, Inc. Sec. Litig.*,
  2019 WL 6771749, Ga. Dec. 11 ........................................................................ 11, 20, 23

*In re Friedman's Inc. Sec. Litig.*,
  2009 WL 1456698 (N.D. Ga. May 22, 2009) ........................................................ 14

*In re Marsh & McLennan Cos. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................................... 24

*In re Netbank, Inc. Sec. Litig.*,
  2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ....................................................... 11

*In re Priceline.com, Inc. Sec. Litig.*,
  2007 WL 2115592 (D. Conn. July 20, 2007) ......................................................... 4

*In re Remeron End-Payor Antitrust Litig.*,
  2005 WL 2230314 (D.N.J. Sept. 13, 2005) ........................................................... 22

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  2013 WL 5505744 (D.N.J. Oct. 1, 2013) .............................................................. 18

*In re Sterling Fin. Corp. Sec. Class Action*,
  2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) ......................................................... 8

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) ............................................................ 12, 17

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................. 15, 18

*In re: Managed Care Litig. v. Aetna*,
  2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) ..................................................... 20

*In Re: Syngenta Ag Mir 162 Corn Litig.*,
  2018 WL 6436074 (D. Kan. Dec. 7, 2018) .......................................................... 17

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) .......................................................................... 8

*Janus Capital Grp., Inc. v. First Deriv. Traders*,
  564 U.S. 135 (2011) ............................................................................................. 15

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ................................................................................. 5

*Johnson v. NPAS Sols., LLC*,
  2020 WL 5553312 (11th Cir. Sept. 17, 2020)....................................................... 23

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981)............................................................................ 14

*Jorling v. Anthem, Inc.*,
  836 F. Supp. 2d 821 (S.D. Ind. 2011) ............................................................... 17

*Mahoney v. TT of Pine Ridge, Inc.*,
  2017 WL 9472860 (S.D. Fla. Nov. 20, 2017) ...................................................... 8

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 679 (M.D. Ala. 1988) ..................................................................... 8

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................................................... 17

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ............................................................................................ 7

*Morgan v. Public Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. 2016)......................................................... 13, 19

*Pinto v. Princess Cruise Lines Ltd.*,
  513 F. Supp. 2d 1334 (S.D. Fla. 2007).................................................. 2, 8, 13, 14

*Pritchard v. Apyx Medical Corporation*,
  2020 WL 1180731 (M.D. Fla. Mar. 11, 2020)................................................... 10

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992)............................................................. 8, 15, 21

*Reyes* v. *AT&T Mobility Servs., LLC*,
  2013 WL 12219252 (S.D. Fla. June 21, 2013) .................................................. 19

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997)......................................................................... 15

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Jan. 13, 2006).................................................... 12

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000) ................................................................ 20

*Silverman v. Motorola, Inc.*,
  2012 WL 1597388 (N.D. Ill. May 7, 2012 ......................................................................... 18

*Thorpe v. Walter Inv. Mgmt. Corp.*,
  2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ............................................................... 7, 23

*Waters v. Cook's Pest Control, Inc.*,
  2012 WL 2923542 (N.D. Ala. July 17, 2012) ................................................................... 13

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) .................................................................................... 7, 20

*Wolff v. Cash 4 Titles*,
  2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ............................................................. 14, 20

## STATUTES

15 U.S.C. § 78u-4(a)(4) ........................................................................................................ 23

15 U.S.C. § 78U–4(a)(6) .......................................................................................................... 4

15 U.S.C. § 78u-4(b)(3)(B) ................................................................................................... 17

## OTHER AUTHORITIES

*Attorneys' Fees in Class Actions: 2009-2013*,
  92 N.Y.U. L. Rev. 937 (Oct. 2017) ................................................................................. 19

Court-appointed Lead Counsel Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel") respectfully submit this memorandum of law in support of its request for attorneys' fees of 33⅓% of the Settlement Fund (or $1,000,000, plus interest at the same rate as the Settlement Fund) on behalf of all Plaintiffs' Counsel.[1]  Lead Counsel also seek reimbursement of $37,616.93 in litigation-related expenses, as well as $7,500 for Lead Plaintiff Gregory P. Mouton ("Mouton") and $2,500 for plaintiff Kyle Pritchard ("Pritchard" and together with Mouton, "Plaintiffs"), as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.    INTRODUCTION

The proposed Settlement, which provides for a non-revisionary cash payment of $3,000,000 in exchange for the resolution of the Action, represents an extremely favorable result for the Settlement Class, particularly when juxtaposed against the significant obstacles that Plaintiffs would have had to overcome in order to prevail in this complex securities fraud litigation.  In undertaking this case, Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages.  The risk of losing was very real, and it was greatly enhanced by the fact that Lead Counsel would be litigating against a corporate defendant represented by highly-skilled defense counsel under the PSLRA's heightened pleading standard.  *See Alaska Elec. Pension Fund v. Flowserve Corp*., 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle

---

[1] Unless otherwise defined herein, all capitalized terms are defined in the Stipulation of Settlement dated July 9, 2020 (the "Stipulation") (ECF No. 55-1), or in the concurrently filed Declaration of Casey E. Sadler in Support of (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Sadler Declaration" or "Sadler Decl.").  Unless otherwise noted, all citations to "¶__" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Sadler Declaration.

made smaller and smaller over the years by judicial decree and congressional action.").[2] Despite these risks, Plaintiffs' Counsel collectively worked over 997.45 hours over the course of a year and a half, and advanced $37,616.93 in hard costs, all on a contingency basis with no guarantee of ever being compensated. The work performed by Plaintiffs' Counsel is summarized below (*see* § II.A.1, *infra*) and set forth in detail in the Sadler Declaration.[3]

Lead Counsel respectfully request a fee award in the amount of 33⅓% of the Settlement Fund, as compensation for their significant efforts and achievements on behalf of the Settlement Class. The requested fee is consistent with attorney-fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Plaintiffs' Counsel's lodestar. Indeed, the requested fee represents a multiplier of 1.6 on Plaintiffs' Counsel's lodestar, which is well below the range of multipliers typically awarded in class actions with substantial contingency risks such as this one. *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5" and that "three appears to be the average"); *see also* n. 8, *infra* (collecting cases).

Lead Counsel also seek reimbursement of $37,616.93 in out-of-pocket litigation expenses incurred in prosecuting this Action. *See* ¶¶87-90. This amount is below the limit disclosed in the Notice, and equates to less than 3.8% of the Settlement Fund. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

---

[2] Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

[3] The Sadler Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a history of the Action (¶¶10, 14-30); summary of the work performed by Plaintiffs' Counsel (¶¶10, 16-29); and additional information on the factors that support this fee request (¶¶69-91), including the lodestar cross-check (¶¶71-77).

Finally, Plaintiffs Mouton and Pritchard respectfully request PSLRA awards of $7,500 and $2,500, respectively, to compensate them for the time and effort they expended on behalf of the Settlement Class. Exs. 1-2. Each Plaintiff familiarized himself with the facts of the case, reviewed relevant pleadings, conferred with Lead Counsel about the litigation, collected and produced relevant documents to Lead Counsel, and authorized Lead Counsel to settle the case. *See* Ex. 1 ("Mouton Decl.") at ¶5; Ex. 2 ("Pritchard Decl.") at ¶5. But for their efforts, the Settlement Class would have recovered nothing. *See Bell v. Pension Committee of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019) ("Without [Plaintiffs'] commitment to pursuing these claims, the successful recovery for the Class would not have been possible."); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) ("Congress, the Executive Branch, and [the Supreme] Court . . . have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions.").

For the reasons set forth herein, and in the Sadler Declaration, Lead Counsel respectfully request that the Court award Lead Counsel 33⅓% of the Settlement Fund, approve reimbursement of $37,616.93 in litigation-related expenses, and grant PSLRA awards to Plaintiffs Mouton and Pritchard in the aggregate amount of $10,000.

## II.   PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE $3,000,000 SETTLEMENT FUND

The Supreme Court and the Eleventh Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and prevent unjust enrichment of

3

persons who benefit from a lawsuit without bearing its cost.  *See Boeing*, 444 U.S. at 478.

Courts have also recognized that, in addition to providing just compensation, fee awards

serve to "encourage enforcement of the securities laws and support attorneys' decisions to

take these types of cases on a contingent fee basis," and "perpetuate the availability of skilled

counsel for future cases of this nature."  *In re Priceline.com, Inc. Sec. Litig*., 2007 WL

2115592, at *5 (D. Conn. July 20, 2007).[4]

In *Camden I*, the Eleventh Circuit announced the rule that "attorneys' fees awarded

from a common fund ***shall*** be based upon a reasonable percentage of the fund established for

the benefit of the class."  *Camden I*, 946 F.2d at 774.  This approach is consistent with the

PSLRA.  15 U.S.C. § 78U–4(a)(6) ("Total attorneys' fees and expenses awarded by the court

to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of

any damages and prejudgment interest actually paid to the class.").

> A percentage-based fee award accomplishes several objectives:
>
> First, it is consistent with the private market place where contingent fee attorneys are regularly compensated on a percentage of recovery method. Second, it provides a strong incentive to plaintiffs' counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances.  Finally, the percentage approach reduces the burden [on] the Court to review and calculate individual attorney hours and rates and expedites getting the appropriate relief to class members.

*Garst v. Franklin Life Ins. Co*., 1999 U.S. Dist. LEXIS 22666, at *83-*84 (N.D. Ala. June

25, 1999).  These rationales support the percentage-based award requested by Lead Counsel.

---

[4] *Accord Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1217 (S.D. Fla. 2006). ("Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.' . . . Unless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct.").

4

III.   **A FEE AWARD OF 33⅓% OF THE SETTLEMENT FUND IS FAIR AND REASONABLE IN THIS CASE**

A.     **The Requested 33⅓% Fee Is Reasonable Under the *Camden I* Factors**

In the Eleventh Circuit, "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774; *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) (same). "Rather, the amount of any fee 'must be determined upon the facts of each case' after evaluating certain criteria." *Cabot East Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *1 (S.D. Fla. Nov. 9, 2018), quoting *Camden I*, 946 F.2d at 774-75. That criteria includes the 12 *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  *Camden I* also recognized that in awarding a percentage fee award, a court may properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action." *Id.* at 775.

1.     **The Time and Labor Expended by Lead Counsel Supports the Requested Fee**

The "time and labor" required confirms the reasonableness of the fee. *Camden I*, 946 F.2d at 772 n.3.  As detailed herein and in the Sadler Declaration, Plaintiffs' Counsel

5

litigated the Action for the past year and a half.  ¶¶10, 16-29.  In the course of the litigation, Lead Counsel, among other things:

- conducted a detailed and substantive investigation of Apyx Medical Corporation ("Apyx" or the "Company"), the Individual Defendants, and the fraudulent misrepresentations and omissions alleged in the Action, which included: (i) review and analysis of Apyx's filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, transcripts of Apyx investor calls, and other public statements made by Defendants prior to, during, and after the Settlement Class Period, as well as research reports prepared by securities and financial analysts regarding Apyx, and publicly available documents, reports, announcements, and news articles concerning Defendants; (ii) consultation with experts in market efficiency, loss causation and damages; and (iii) consultation with an FDA expert with respect to FDA submission processes and practices;

- prepared and filed the initial complaint in this Action (ECF No. 1), and the comprehensive and factually detailed 41-page Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint," ECF No. 29) incorporating the foregoing research and investigative efforts;

- successfully negotiated with Defendants' counsel regarding the production of additional parts of Apyx's 501(k) application in conjunction with the motion to dismiss briefing;

- fully briefed Defendants' motion to dismiss the Complaint, and prevailed against the motion;

- successfully opposed Defendants' request for leave to file a reply in further support of their motion to dismiss the Complaint (ECF No. 38);

- analyzed Defendants' answer to the Complaint and their twenty-seven affirmative defenses (ECF No. 50);

- created a substantial discovery plan, which included areas of discovery, potential deponents and custodians, the drafting of requests for documents and interrogatories, and communicating with Plaintiffs regarding discovery;

- engaged in an adversarial mediation process and extensive settlement negotiations, which involved, (i) preparing a detailed mediation statement addressing liability, loss causation, and damages along with exhibits, (ii) reviewing and analyzing Defendants' mediation statement, and (iii) participating in a full-day mediation session with an experienced and highly respected mediator, Jed D. Melnick, Esq. of JAMS, where the Parties and counsel for the D&O insurance carrier

6

engaged in full and frank discussions concerning the merits of the Action, including, for example, heavily disputed issues of whether Defendants acted with the requisite scienter, Plaintiffs' ability to prove loss causation, and the appropriate length of the class period;

- negotiated and drafted the Stipulation, including the exhibits thereto; and

- drafted the preliminary and final approval briefs. ¶¶10, 16-29.

The efforts that were required to complete these tasks, as well as others, were extensive and represented an immense risk, given the contingency-based nature of Plaintiffs' Counsel's representation. ¶¶78-81. To date, Plaintiffs' Counsel have spent over 997.45 hours litigating this case.[5] ¶73. Plaintiffs' Counsel has also incurred $37,616.93 in unreimbursed litigation expenses. ¶89. Plaintiffs' Counsel's substantial time and effort devoted to this case was critical to obtaining the Settlement and, as a result, this factor supports the fee request. *See Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at \*8 (S.D. Fla. Oct. 17, 2016) (finding the "significant time and labor that Class Counsel expended on behalf of the Class with no assurance of ultimately being paid" supported counsel's fee request).

Moreover, while not required by the Eleventh Circuit, an analysis of the requested fee utilizing the "lodestar/multiplier" approach as a cross-check, further supports the reasonableness of the requested fee. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"). Here, the cumulative time expended by Lead Counsel, multiplied by current rates,[6] results in a lodestar

---

[5] If the Settlement is approved, additional time will be spent ensuring that the Settlement is properly distributed to the Settlement Class.

[6] Lead Counsel rates range from $675-945 for partners, $375-575 for associates, and $395 for project attorneys. ¶74. Courts use current rather than historic rates to "compensate for delay in receiving fees." *In re Enron Corp.*, 586 F. Supp. 2d 732, 779 (S.D. Tex. 2008) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989). Additionally, Lead Counsel's rates are comparable to firms engaged in similar complex litigation (*see* Ex. 7), and Courts within this

of $609,126.25.  The requested fee thus equates to a multiplier of 1.6.[7]  This multiplier is well below the "2.26 to 4.5" range of multipliers frequently awarded in class action settlement of similar magnitude in courts within the Eleventh Circuit.  *Princess Cruise Lines Ltd.*, 513 F. Supp. 2d at 1344 (noting that lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5" and that "three appears to be the average").[8]

### 2.    The Novelty and Difficulty of the Issues Involved

The requested fee is also reasonable because Lead Counsel obtained an excellent result in the face of the "multi-faceted and complex legal questions endemic to § 10(b) litigation, including proving scienter, materiality, causation, and damages."  *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).  Moreover, courts have recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of

---

Circuit have consistently approved rates similar to Lead Counsel's rates.  *See Finerman v. Marriott Ownership Resorts, Inc.*, No. 3:14-cv-01154-J-32MCR (M.D. Fla Aug. 15, 2018) (Dkt. No. 222) (approving 2018 rates of $950 for partners, $864 for associates); *Bishop v. Shorter Univ., Inc.*, No. 4:15-cv-00033 (N.D. Ga. Feb. 20, 2015) (Dkt. Nos. 91, 95) (approving 2015 rates as high as $950 per hour for partners).

[7] The multiplier is calculated by dividing the $1,000,000 fee request by the $609,126.25 in lodestar that Plaintiffs' Counsel incurred.

[8] *See also Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable."); *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998) (finding multiplier of 2.34 reasonable); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) ("a multiplier of approximately four times lodestar . . . is well within the range of approved fees"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4); *Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, at *12 (S.D. Fla. Nov. 20, 2017) (awarding fee representing a "reasonable multiplier of 2.32"); *Brenowitz v. Implant Seminars, Inc.*, 2017 WL 3438879, at *5 (S.D. Fla. Aug. 10, 2017) (fee award representing a multiplier of 2.0 and noting, "these multipliers are often approved when the risks are substantial."); *Barnhill v. In re Florida Microsoft Anti-Trust Litigation*, 905 So.2d 195 (Fla. 3d DCA 2005) (awarding fee representing a contingency risk multiplier of 1.77).

8

the PSLRA." *In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at \*4 (E.D. Pa. Sept. 10, 2009); *see also Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978) ("a securities case, by its very nature, is a complex animal."), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).  This case was no exception.

Although Plaintiffs believe that the allegations of the Complaint would ultimately translate into a strong case for liability, Plaintiffs were also aware of the many risks to proving their claims.  Indeed, Plaintiffs faced numerous hurdles to establishing liability.  As detailed in the Sadler Declaration (¶¶31-52) and the Final Approval Memorandum (pp. 9-13), Defendants raised credible arguments challenging the sufficiency of the allegations with regard to falsity, scienter, loss causation and damages.  Plaintiffs, of course, bore the burden of ***proving*** each of those four elements.  If Defendants prevailed on any of these elements, it would be fatal to Plaintiffs' claims.  Even if only some of Defendants' arguments were successful and Plaintiffs' claims remained, Defendants' arguments regarding the length of the class period, loss causation and damages posed a significant threat that total recoverable damages would be significantly reduced, if not eliminated.  These obstacles to recovery were present at the outset of the litigation and, absent settlement, they would have remained until a judgment was affirmed on appeal.

For example, Defendants would have strenuously argued, among other things, both at summary judgment and at trial that their statements prior to March 13, 2019 were true, nonactionable opinions, constituted puffery and that they had no duty to disclose the study results.[9]  If Defendants' arguments were accepted by the trier of fact, the effect would have

---

[9] Specifically, Defendants would have argued: (a) that the pre-March 13, 2019 statements— including statements that the Company was "very pleased" with the study results, "optimistic" about receiving regulatory clearance, and characterizing Apyx's financial outlook as "very positive"—were nonactionable puffery and/or opinion; (b) that there was no duty to disclose the contents of the 510(k) study given that the relevant regulations only mandated that they disclose the results within one year of the study's completion and that

9

been to shorten the class period from approximately three months (December 21, 2018 through April 1, 2019, inclusive) to 20 days (March 13 through April 1, 2019, inclusive), and the maximum recoverable damages in this case would have been drastically reduced to $3.6 million. Indeed, the Court's order on Defendants' motion to dismiss only addressed the falsity of the March 13, 2019 statements in response to the WDR Report, and not any earlier statements. *Pritchard v. Apyx Medical Corporation*, 2020 WL 1180731, at *5 (M.D. Fla. Mar. 11, 2020) ("One actionable omission is sufficient to defeat Defendants' Motion to Dismiss.").

Defendants would also have continued to vigorously dispute that they had acted with scienter, an element commonly regarded as the most difficult to prove in a securities fraud action. *See Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[t]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("Proving scienter is hard to do."). Here, Defendants argued that there was no motive for Defendants to engage in the purported fraud because the truth would ultimately come out when the FDA rendered is verdict on the application and no corporate insider had made a single insider stock sale during the class period. ¶38. Defendants also pointed to the fact that Plaintiffs had failed to cite a single internal Apyx document or statement from a confidential witness in support of scienter. *Id.* Furthermore, Defendants claimed that Plaintiffs could not allege that the Defendants believed that the study would fail since the Company was engaging in a good faith dialogue with the FDA regarding the FDA's concerns and that they believed the application could be approved based on the secondary endpoints alone. *Id.*

---

they had not partially disclosed any of the results during the class period leading to a duty to disclose all the results; and (c) that certain statements—including that the 501(k) application "is supported by data from" it clinical trials and that the 501(k) application was a "highlight" and "milestone"—were true and, therefore, not actionable. ¶¶34-36.

10

Finally, even assuming that Plaintiffs overcame each of the above risks, Plaintiffs would have confronted considerable additional challenges to establishing loss causation and damages. While Plaintiffs would have argued that the declines in the prices of Apyx's securities were attributable to corrections of the alleged misstatements and omissions, Defendants would have asserted that much of the declines were due to other negative news, and that even if some portion of the decline in Apyx's stock price was caused by corrective disclosures, damages were minimal or non-existent. ¶42. For example, Defendants would have argued that the 25-page WDR Report contained a host of negative information about the Company and its management, and that Plaintiffs' expert would not be able to disaggregate and quantify the losses attributable to the alleged disclosures related to the 501(k) study results. *Id.* In fact, Defendants had previously argued, and would no doubt continue to assert, that the WDR Report did even not qualify as a corrective disclosure because it did not contain any new non-public information concerning the 501(k) study results. ECF No. 30 at pp. 24-25. Had Defendants prevailed on this argument, Plaintiffs and the putative class would not have recovered anything based on the WDR Report.

While Plaintiffs' Counsel believe that they would have ultimately been able to overcome all of Defendants' arguments, there can be no question that this Action was difficult, complex, and fraught with risk. Plaintiffs' Counsel nevertheless obtained an excellent result. Success in the fact of these obstacles strongly supports the requested fee. *See NetBank*, 2011 WL 13353222, at *3 (awarding 34% fee and noting that "securities class action litigation is notably difficult and notoriously uncertain."); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *2 (M.D. Ga. Dec. 11, 2019) (awarding 33⅓% of $21 million settlement fund and noting that the securities class action "raised a number of complex issues.").

11

### 3.      The Skill Required to Perform the Legal Service Adequately and the Experience, Reputation, and Ability of the Attorneys

The Court should also consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n.15 (S.D. Fla. April 15, 2010), and "the experience, reputation and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3.

Considerable litigation skills were required and called upon here. As noted above, this is a highly-complex case involving difficult factual and legal issues. Given the complexity of the Action and the presence of numerous contested issues, it took highly-skilled counsel to represent the Settlement Class and bring about the excellent recovery obtained. Lead Counsel practices extensively in the highly challenging field of complex class action litigation and is one of the nation's leading securities class action litigation firms. *See* Sadler Decl., Ex. 4-C (GPM firm résumé). Without question, Lead Counsel's skills and experience were a major factor in obtaining the excellent result achieved by this Settlement. *See Columbus Drywall*, 2012 WL 12540344, at *4 ("The appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation.")

In evaluating the quality of Lead Counsel's work, it is also important to consider the "quality of the opposition the plaintiffs' attorneys faced." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001). Here, Defendants were vigorously represented by Freshfields Bruckhaus Deringer US LLP, one of the world's largest, most prominent and capable law firms. Notwithstanding this formidable opposition, Lead Counsel's thorough investigation, opposition to Defendants' motion to dismiss, and mediation efforts, positioned Plaintiffs to achieve a favorable recovery for the Settlement Class. Thus, this factor plainly supports the reasonableness of the requested fee. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Jan. 13, 2006) ("The ability of plaintiffs' counsel to obtain such a

12

favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation").

### 4.      The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case—997.45 hours (¶73)—was time Plaintiffs' Counsel could have devoted to other matters.  Moreover, Plaintiffs' Counsel expended this time and effort without any assurance that they would ever be compensated for their hard work.  Consequently, this factor further supports the requested fee.

### 5.      The Requested Fee Is Customary for a Case Such As This One

"The court [also] considers the market rate when determining fee awards to class counsel."  *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016).  "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Princess Cruise Lines*, 513 F. Supp. 2d at 1340.  "In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients."  *Id*. at 1341.[10]

Lead Counsel's request for 33⅓% of the Settlement Fund is well within the private marketplace range, and is consistent with what courts routinely award in class actions, as discussed below.  *See infra* at pp. 19-20.  Accordingly, this factor weighs in favor

---

[10] *See also Waters v. Cook's Pest Control, Inc*., 2012 WL 2923542, at *16 (N.D. Ala. July 17, 2012) (finding that the customary fee factor weighed in favor of a 35% fee award because class counsel "customarily enters into contingency fee agreements allowing for recovery of 33% in low risk cases with uncontested or moderately contested liability, and up to 49% in higher risk cases with difficult liability issues"); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc*., 2017 WL 7798110, at *4 (S.D. Fla.  Dec. 18, 2017) ("The requested fee also falls within the range of the customary fee in the private market place, where 40 percent fee contracts are common for complex cases such as this.").

13

of the requested fee.

### 6.   Lead Counsel Assumed Substantial Risk and Pursued This Case on a Pure Contingency Basis

Courts have consistently recognized that the risk that class counsel could receive little or no recovery is a major factor in determining a fee award:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee . . . and the fact that the risks of failure and nonpayment in a class action are extremely high.  Cases recognize that attorneys' risk is "'perhaps the foremost' factor" in determining an appropriate fee award.

*Princess Cruise Lines*, 513 F. Supp. 2d at 1339.[11]  "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."  *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981).  This is so because of the risk that after investing thousands of hours, plaintiffs' counsel may receive no compensation whatsoever.  Indeed, *Behrens* provides:

> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged.  If the ultimate effectiveness of these remedies is to be preserved, the efficacy of class actions and of contingency fee arrangements — often the only means of legal representation available given the incredible expense associated with these actions — must be promoted.

118 F.R.D at 548.

Moreover, the risk of no recovery in complex cases like this one is very real.  Lead Counsel know from personal experience that despite the most vigorous and competent of

---

[11] *See also Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *1 (S.D. Fla Sept. 26, 2012) ("It was Class Counsel alone that bore the entire risk of this representation – a significant finding in support of the requested fee."); *In re Friedman's Inc. Sec. Litig.*, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009) ("The contingent nature of fees in this case should be given substantial weight in assessing the requested fee award."); *Behrens*, 118 F.R.D at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

efforts, success in complex contingent litigation is never guaranteed.  *See, e.g.*, *In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) (GPM served as Co-Lead Counsel in case where, after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, and a multi-week trial, the jury returned a verdict in favor of defendants alleged to have conspired to fix the prices of Korean ramen noodles).

And, Lead Counsel are not alone.  There are many other hard-fought lawsuits where counsel suffered major defeats after years of litigation in which they expended millions of dollars in time and expenses and received no compensation at all, even after a trial victory.[12] The significant risks inherent in this case justify the requested fee.  *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").

### 7.      Time Limitations Imposed by the Client or the Circumstances

This factor does not pertain to this case.

### 8.      The Amount Involved and Results Obtained

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Ressler*, 149 F.R.D. at 655 ("It is well-settled that one of the primary determinants of the quality of the work performed is the result

---

[12] *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs in securities class action); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011)).

obtained.").

The proposed $3,000,000 all cash, non-reversionary Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through a decision on class certification, summary judgment, and trial. Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on each of their claims, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation as to each of the four stock price drop dates alleged in this case—*i.e.*, Plaintiffs' ***best case scenario***—the total ***maximum*** damages would be approximately $18.3 million. ¶50. Thus, the $3 million Settlement Amount represents approximately 16.4% of the total ***maximum*** damages ***potentially*** available in this Action. *Id.* However, as discussed *supra* in Section III.A.2, Plaintiffs and Lead Counsel were extremely cognizant of the risk that the trier of fact could accept Defendants' arguments regarding the shortening of the Class Period, which would dramatically reduce the maximum recoverable damages available to the Settlement Class to approximately $3.6 million. Under this scenario, the $3 million recovery equates to approximately 83.3% of the ***maximum*** recoverable damages. ¶51.

In comparison, the median recovery in all securities class actions in 2019 was approximately 4.8% of estimated damages, and 12.8% in cases where the damages were less than $25 million. *See* Ex. 6 (Cornerstone Report, "Securities Class Action Settlements 2019 Review and Analysis," at p. 6 Figure 5). A recovery between 16.4% (assuming ***maximum*** recoverable damages) and 83.3% (under the shortened class period advocated by Defendants) is well above these median recoveries in similar matters, and it is an excellent result when compared to the risks of continued litigation.

### 9.    The Undesirability of the Case

Courts consider the "undesirability" of a case in awarding attorney fees in recognition

of the "positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important" cases, and the understanding that "such decisions must be properly incentivized." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011); *see also In re Sunbeam*, 176 F. Supp. 2d at 1336 ("A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk.").

Here, Plaintiffs' Counsel undertook the Action on a fully contingent basis, assuming the significant risk that the litigation would yield no recovery and leave them uncompensated. Unlike counsel for Defendants, who are typically paid an hourly rate and regularly reimbursed for their expenses, Plaintiffs' Counsel have not been compensated for *any* time or reimbursed for any of their out-of-pocket expenses since this case began over a year and a half ago. ¶79. And, the risks in this case were not illusory; rather, they were very real from the time Lead and Liaison Counsel initiated the Action on behalf of Mr. Pritchard, and they continued throughout the litigation. ¶80. Leaving aside the many obstacles to recovery inherent in a complex securities fraud class action—including, but not limited to, the PSLRA's heightened pleading standard and automatic stay of discovery (15 U.S.C. § 78u-4(b)(3)(B))—this was a particularly unattractive and highly risky case. *See Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (discussing the PSLRA's "heightened pleading requirements, making it more difficult for plaintiffs to survive a motion to dismiss, and thus receive the keys to unlock the discovery process").

"One proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter." *Dairy Farmers*, 80 F. Supp. 3d at 848. "This inquiry provides insight into whether class counsel benefitted from the work of others, which acts a red flag for judges assessing fee petitions." *Id.* In the instant case, there was no governmental or journalistic investigation of any sort.

17

Rather, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *In Re: Syngenta Ag Mir 162 Corn Litig.*, 2018 WL 6436074, at *12 (D. Kan. Dec. 7, 2018) (concluding that attorney fee award of 1/3 in super-mega-fund case was justified, in part, by the fact that the "case did not involve a government investigation or prosecution of the defendant").[13]

Moreover, this was not a restatement case. When companies restate their financials, they are admitting a material misstatement of their financial reporting. A case predicated on a restatement is, therefore, less risky because the misstatement and materiality elements of a securities fraud claim are already met. *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744 at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement); *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (noting that one of the many hurdles plaintiffs faced was the fact that the case did not involve a restatement of financials).

All of these facts and obstacles further underscore the undesirability of this case from a risk perspective. Consequently, this factor weighs in favor of the requested fee.

### 10. Nature and Length of the Professional Relationship with the Client

Lead Counsel filed the initial complaint in this Action on behalf of Mr. Pritchard, and

---

[13] *See also Dial Corp. v. News Corp.*, 317 F.R.D. 426, 434 (S.D.N.Y. 2016) ("While many class actions are filed on the heels of a government investigation, the claims in this case were formulated entirely from the findings of a private investigation."); *Silverman*, 2012 WL 1597388, at *3 (fee request supported by fact that "there were no governmental investigations or prosecutions related to the alleged fraud upon which Class Counsel could rest their theory of the case. Rather, they investigated the facts and developed their theory of liability from scratch, involving significant time and expense."); Alexander Dyck, *et al.*, *Who Blows the Whistle on Corporate Fraud?*, 65 The Journal of Finance 2213, 2225 (2010) (private lawyers were the first to discover fraud only 3% of the time).

have represented Lead Plaintiff Mouton since shortly before filing the motion for appointment for lead plaintiff on his behalf.  ¶¶16-17.  Both Plaintiffs have been actively involved in this litigation, and both support the Settlement and Lead Counsel's request for attorneys' fees.  *See* Mouton Decl., ¶¶3-8; Pritchard Decl., ¶¶3-7.

### 11.    Awards in Similar Cases Support a Fee Award of 33⅓% of the Settlement Fund

When *Camden I* was decided 27 years ago, the "'bench mark' percentage fee award" was considered to be 25%, although the Court made clear that there "is no hard and fast rule mandating a certain percentage of a common fund … because the amount of any fee must be determined upon the facts of each case."  946 F.2d at 774-75.  Today's "bench mark" is much higher, particularly in complex cases like this.  *See Reyes* v. *AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) (collecting cases and stating, "Class Counsel's request for one-third of the settlement fund is consistent with the trend in this Circuit."); *Morgan*, 301 F. Supp. 3d at 1257-8 (collecting cases and stating, "a fee award of 33% . . . is consistent with attorneys' fees awards in federal class actions in this Circuit . . . ").  Indeed, recent empirical studies have shown that, in this Circuit, the median percentage fee award is currently 33%, which is not surprising as "courts within this Circuit have routinely awarded attorneys' fees of *33 percent or more* of the gross settlement fund." *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (collecting cases); Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (Oct. 2017) (finding that, over a four year period, the mean fee award in the Eleventh Circuit was 30% and the median award was 33%); *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ("courts in the Eleventh Circuit routinely

approve fee awards of one-third of the common settlement fund").[14]

Moreover, a review of attorneys' fees awarded in comparable complex litigation settlements in the Eleventh Circuit strongly supports the reasonableness of the 33⅓% fee request here.  *See Waters*, 190 F.3d at 1294-95 (affirming 33⅓% award of $40 million common fund); *Fernandez*, 2017 WL 7798110, at *4 (awarding 35% of $25 million); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *2 (M.D. Ga. Dec. 11, 2019) (awarding 33⅓% of $21 million); *Cabot*, 2018 WL 5905415, at *1 (awarding 33⅓% of $100 million settlement fund); *In re: Managed Care Litig. v. Aetna*, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Masco*, 2012 WL 12540344, at *1 (awarding one-third of the $75 million settlement fund, plus expenses).  *See also* Ex. 8 (collecting Eleventh Circuit cases); Ex. 9 (collecting cases outside the Eleventh Circuit).

In sum, the fees commonly awarded in comparable complex litigation settlements strongly demonstrate the reasonableness of the requested fee.

### 12.    Plaintiffs Have Approved the Requested Fee

As set forth in Plaintiffs' respective declarations, both Lead Plaintiff Mouton and plaintiff Pritchard played active roles in the prosecution and resolution of the Action, and thus both have a sound basis for assessing the reasonableness of the fee request.  *See* Ex. 1 (Mouton Decl., ¶¶3-5); Ex. 2 (Pritchard Decl. ¶¶3-5).  Plaintiffs carefully evaluated the fee request and fully support and approve the fee request as fair and reasonable in light of the result obtained, the work performed by Lead Counsel, and the risks of the litigation.  *See* Ex.

---

[14] S*ee also Shaw v. Toshiba Am. Info. Sys., Inc*., 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that … fee awards in class actions average around one-third of the recovery."); *Cash 4 Titles*, 2012 WL 5290155, at *6 (collecting cases and stating that "the [33%] requested fee is entirely consistent with the percentage awarded in class actions in the Southern and Middle Districts of Florida since the percentage-of-fund approach was adopted by the Eleventh Circuit in *Camden I*.")

1 (Mouton Decl.) at ¶8; Ex. 2 (Pritchard Decl.) at ¶7.

### 13.   The Settlement Class's Reaction Also Supports the Requested Fee

The reaction of the Settlement Class to date further confirms the reasonableness of the requested fee.  Here, the Settlement Class was notified of the Settlement and the request for attorney's fees and reimbursement of Litigation Expenses by a combination of first-class mail, publication, and the settlement website (www.ApyxSecuritiesSettlement.com, the "Settlement Website").  As of September 28, 2020, the Claims Administrator, Strategic Claims Services ("SCS"), has disseminated the Postcard Notice to approximately 4,980 potential Settlement Class Members and their nominees informing them of Lead Counsel's intention to apply to the Court for an award of attorneys' fees of 33⅓% of the Settlement Fund, and reimbursement of Litigation Expense up to $50,000, which could include an application for reimbursement of the reasonable costs incurred by the Plaintiffs directly related to their representation of the Settlement Class.  *See* Ex. 3 (Bravata Decl., at ¶¶2-7 and Ex. 3-A (Postcard Notice)).  Settlement Class Members were also informed of their right to object to such an application.  *Id.*  In addition, SCS caused the Notice to be posted on the Settlement Website, and the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *PR Newswire*.  *Id.* at ¶8; Ex. 3-C.  While the time to object does not expire until October 16, 2020, to date, no objections to the request for attorneys' fees and expenses have been received.[15]  ¶84.  The lack of objections is "strong evidence of the propriety and acceptability" of the fee request.  *Ressler*, 149 F.R.D. at 656.

## IV.   THE LITIGATION EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's fee application includes a request for reimbursement of expenses that are "reasonable and necessary to obtain the [S]ettlement reached."  *Ressler*, 149 F.R.D. at

---

[15] Lead Counsel will address any objections that may be received in the reply papers to be filed with the Court on October 30, 2020.

657; *see also* ¶¶87-91.  These expenses are properly recoverable.  *Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd* 899 F.2d 21 (11th Cir. 1990) ("plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action").  As set forth in detail in the Sadler Declaration, Plaintiffs' Counsel incurred $37,616.93 in litigation-related expenses.  ¶¶89-90.

The types of expenses for which Plaintiffs' Counsel seek reimbursement were necessarily incurred in litigation and are routinely charged to classes in contingent litigation and clients billed by the hour.  These expenses include, among others, costs and fees for experts and consultants, mediation, on-line legal and factual research, court filing fees, and PSLRA mandated notice.  *Id.*  "Reimbursement of similar expenses is routinely permitted." *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *32 (D.N.J. Sept. 13, 2005); *see also Gevaerts v. TD Bank*, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5 2015) (approving reimbursement of expenses related to, among other things, "fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses.").  Moreover, from the outset, Plaintiffs' Counsel were aware that they might not recover any of these expenses or, at the very least, would not recover anything until the Action was successfully resolved.  Thus, Plaintiffs' Counsel were motivated to, and did, take significant steps to minimize these expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action.  ¶88.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of Litigation Expenses in an amount not to exceed $50,000.  Ex. 3-D at ¶5.  The total Litigation Expenses in the amount of $47,616.93 ($37,616.93 in hard costs incurred in prosecuting the Action, plus an aggregate of $10,000 to the Plaintiffs as

22

reimbursement for their reasonable costs incurred in representing the Settlement Class) is below the amount listed in the Notices and, to date, there has been no objection to the request for expenses. ¶5.

## V.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES PURSUANT TO THE PSLRA

In connection with the Lead Counsel's request for payment of litigation expenses, Plaintiffs respectfully request a total of $10,000 ($7,500 for Lead Plaintiff Mouton and $2,500 for plaintiff Pritchard) in PSLRA awards to reimburse Plaintiffs for the costs and expenses incurred by them directly relating to their representation of the Settlement Class. ¶91; Exs. 1 & 2. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4)[16]; s*ee also Thorpe*, 2016 WL 10518902, at *12 (awarding $15,000 to each class representative as "fair and reasonable"); *In re Flowers Foods, Inc. Sec. Litig*., 2019 WL 6771749, at *2 (M.D. Ga. Dec. 11, 2019) (awarding plaintiffs $10,000 each "as reimbursement for [their] reasonable costs and expenses directly related to [their] representation of the Settlement Class"); *Aranaz et al v. Catalyst Pharm. Partners Inc et al.*, No. 1:13-cv-23878-UU, ECF No. 153 at p. 8 (S.D. Fla Mar. 16, 2015) (awarding $10,000 to each class representative).

As set forth in their respective declarations, Plaintiffs have actively and effectively fulfilled their obligations as representatives of the Settlement Class. Plaintiffs, among other things: (i) participated in regular discussions with Lead Counsel concerning the prosecution

---

[16] The fact that the lead plaintiff awards requested here are specifically allowed by federal statute differentiates them from the "incentive payments" that the Eleventh Circuit recently held were forbidden in certain class actions. *See Johnson v. NPAS Sols., LLC*, No. 18-12344, 2020 WL 5553312, at *12 (11th Cir. Sept. 17, 2020) ("If either the Rules Committee or Congress doesn't like the result we've reached, they are free to amend Rule 23 or to provide for incentive awards by statute.").

of the Action and strengths and weaknesses of the claims; (ii) reviewed significant pleadings; (iii) collected and produced documents to counsel; and (iv) were closely involved in mediation efforts and settlement negotiations. *See* Mouton Decl. ¶¶3-6, 11; Pritchard Decl. ¶¶3-5, 10.

The foregoing efforts are precisely the types of activities that Courts have found to support reimbursement to class representatives. *See, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at \*21 (S.D.N.Y. Dec. 23, 2009) (awarding over $200,000 to lead plaintiffs to compensate them spent supervising the litigation and noting that these efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives"). Accordingly, Lead Counsel respectfully request that the Court award $7,500 to Lead Plaintiff Mouton and $2,500 to additional named Plaintiff Pritchard as reimbursement for their reasonable costs incurred in representing the Settlement Class.[17]

## VI. CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests the Court grant the motion.[18]

/ / /

/ / /

/ / /

---

[17] To date, there has been no objection to this request.

[18] A revised proposed Order granting the requested relief will be submitted with Lead Counsel's reply papers on October 30, 2020 after the deadline for objecting to the motion has passed.

Dated: October 2, 2020                      Respectfully submitted,


                                            */s/ Casey E. Sadler*
                                            Casey E. Sadler (*pro hac vice*)
                                            Joseph D. Cohen (*pro hac vice*)
                                            **GLANCY PRONGAY & MURRAY**
                                            1925 Century Park East, Suite 2100
                                            Los Angeles, California 90067
                                            Telephone: (310) 201-9150
                                            Facsimile: (310) 201-9160
                                            Email: csadler@glancylaw.com
                                                      jcohen@glancylaw.com

                                            *Lead Counsel for the Settlement Class*

                                            *-and-*

                                            Leo W. Desmond, Esquire
                                            Florida Bar Number 0041920
                                            **DESMOND LAW FIRM, P.C.**
                                            5070 Highway A1A, Suite D
                                            Vero Beach, Florida 32963
                                            Telephone: (772) 231-9600
                                            Facsimile: (772) 231-0300
                                            Email: lwd@desmondlawfirm.com

                                            *Liaison Counsel for the Settlement Class*

25

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certifies that on October 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this matter.

Dated:  October 2, 2020


*/s/ Casey E. Sadler*
Casey E. Sadler

26