# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| KYLE PRITCHARD, Individually and on Behalf of All Others Similarly Situated, | Case No. 8:19-cv-00919-SCB-AEP |
| Plaintiff, | |
| v. | |
| APYX MEDICAL CORPORATION f/k/a BOVIE MEDICAL CORPORATION, and CHARLES D. GOODWIN, | <u>CLASS ACTION</u> |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER

Court-appointed Lead Plaintiff Gregory P. Mouton and plaintiff Kyle Pritchard (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of their unopposed motion ("Motion") for entry of the Proposed Class Distribution Order ("Class Distribution Order") in the above-captioned action (the "Action").[1] If entered by the Court, the Class Distribution Order will, among other things, (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action. The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Bravata Declaration. *See* Bravata Decl. ¶¶21(a)-(f).

## I. BACKGROUND

On July 9, 2020, the Parties entered into the Stipulation, the terms of which established a $3,000,000 Settlement Fund for the benefit of the Settlement Class, consisting of all persons and entities who or which, between December 21, 2018 and April 1, 2019, inclusive, purchased or otherwise acquired Apyx Medical Corporation ("Apyx") common stock or call options, or sold put options, and were damaged thereby.

The Court granted preliminary approval of the Settlement on July 21, 2020. ECF No. 56 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Claims Administrator mailed 4,980 Postcard Notices to potential members of the Settlement Class,

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 9, 2020 (the "Stipulation") (ECF No. 55-1) or the Declaration of Josephine Bravata Concerning the Results of the Claims Administration Process ("Bravata Decl." or "Bravata Declaration"), submitted on behalf of the Court-approved Claims Administrator, Strategic Claims Services ("Claims Administrator").

published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service), established a case-specific website dedicated to the Settlement (www.ApyxSecuritiesSettlement.com, the "Settlement Website"), and set up a toll-free telephone helpline. *See* Bravata Decl. ¶¶4-7. The Settlement Website provided Settlement Class Members with information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims. It also provided Settlement Class Members with access to downloadable documents relevant to the Settlement, such as the Stipulation, Notice, and Claim Form.

On November 6, 2020, the Court entered an order granting final approval of the Settlement as fair, reasonable, and adequate. ECF No. 73. That same day, the Court entered an order approving the Plan of Allocation, which was explained in the Notice posted on the Settlement Website, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund. ECF No. 74.

Lead Counsel now request that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.

## II.    CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms online or by mail, postmarked or received no later than December 16, 2020. *See* ECF No. 68-3, Exhibit A (Notice) at p. 3. The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency. Bravata Decl., ¶¶9-13.

Of the 508 Claims submitted to and fully processed by the Claims Administrator, 30 were paper submissions, and 105 were online submissions through the online filing portal on the Settlement Website. *Id.*, ¶17. The remaining 373 Claims were Electronic Claims filed by E-Claim Filers, who are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants. *Id.* Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim filer is submitting a Claim. *Id.* This process is designed to expedite the claims process. *See id.*

If a paper, online or Electronic Claim was deficient or defective, the Claims Administrator sent a Deficiency Notice, a sample of which is attached as Exhibit C to the Bravata Declaration. *Id.*, ¶12 and Ex. C. The Deficiency Notice advised the Claimant that he, she, or it had twenty (20) days to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶12. Of the 135 paper and online Claims, the Claims Administrator sent Deficiency Notices for 15 Claims (or approximately 11%). *Id.* Of the 373 Electronic Claims, 14 were incomplete or deficient and were filed by a total of four (4) E-Claim Filers. *Id.* The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible, and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, as detailed in the Bravata Declaration, after the deficiency process was complete, the Claims Administrator determined that 167 Claims are acceptable and should receive a distribution. Bravata Decl., ¶18(a). This number includes 162 timely and valid claims, and 5 Late But Otherwise Eligible Claims (addressed in Section III below). *Id.* These Claims represent

a total Recognized Loss amount of $6,026,147.71.[2]  *Id.*, Exs. B-1 & B-2.  The Claims Administrator also determined that 341 Claims are not eligible and should be rejected for the following reasons: (i) 223 Claims had no purchase of shares during the Settlement Class Period; (ii) 65 Claims did not result in a Recognized Claim under the Plan of Allocation; (iii) 17 Claims with shares sold short; (iv) 26 Claims were inadequately documented; (v) 5 Claims were duplicates; (vi) 4 Claims were withdrawn; and (vii) 1 Claim filed by a fraudulent individual.  *Id.*, ¶¶18(b)-(c); Exs. D & E.

## III.   LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the December 16, 2020 claims filing deadline.  Although the Claims Administrator attempted to accept all eligible claims submitted after the deadline, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place.  *See In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001).  Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution.  Accordingly, the Claims Administrator imposed a cut-off date of January 31, 2021—approximately 1.5 months after the Court-imposed December 16, 2020 deadline.

Of all the 508 Claims submitted, 6 were received or postmarked after the December 16, 2020 deadline, but before the Claims Administrator's imposed cut-off date of January 31, 2021.

---

[2] The Recognized Loss amount is $5,283,773.44 for timely valid Claims and $742,374.27 for Late But Otherwise Eligible Claims.  *Id*.

Bravata Decl., ¶17.  Of these 6 Claims, 5 are otherwise eligible ("Late But Otherwise Eligible Claims").  *Id.*, ¶18(a); Ex. B-2.  These 5 Late But Otherwise Eligible Claims have been recommended for payment.  *Id.*  Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit a Claim Form, but while the Claims were still being processed.  *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small.  No significant administrative costs need be incurred to allow the late claims and opt-out claims").  Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan.  *See* Bravata Decl., ¶18(a), 21(a); Ex. B-2.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claims after January 31, 2021 or responses to deficiency letters received after May 5, 2021 be included in the distribution.  "Drawing a line is essential to achieve certainty and finality in such a large class action."  *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, No. 09-MD-2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## IV.    DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all

Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution"). *See* Bravata Decl., ¶21(b). Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to uncashed checks, Lead Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id*., ¶21(c).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after nine months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, then if Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator will conduct a second distribution (the "Second Distribution"). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id*., ¶21(d). Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible. *Id*.

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to the Investor Protection Trust, a non-sectarian, not-for-profit organization dedicated to investor education. *See* Declaration of Cheri Meyer in Support of Plaintiffs' Motion for Class Distribution Order, submitted on behalf of Investor Protection Trust, ¶ 2; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (approving Investor Protection Trust as the *cy pres* beneficiary in a securities class action settlement); *Rihn v. Acadia Pharm. Inc.*, 2018 WL 513448, at *4 (S.D. Cal. Jan. 22, 2018) (same). The proposed Class Distribution Order filed concurrently herewith confirms the Settlement's provisions for such redistribution of any residue of the Net Settlement Fund.

## V.      RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement, and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs,

Lead Counsel, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order. *See In re Miva, Inc.*, 2015 WL 12834962, at *2 (M.D. Fla. Sept. 23, 2015); *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 10671836, at *2 (N.D. Ga. July 23, 2009).

## VI. THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

Based on the work performed by the Claims Administrator, the total fees and expenses charged by the Claims Administrator in this matter are $67,936.22, and brokerage firms and nominees charged the Claims Administrator an additional $650.21. Bravata Decl., ¶20, Ex. G (compilation of Claims Administrator's invoices). To date, the Claims Administrator has received payment of $61,592.67. *Id.* The estimate to conduct the Initial Distribution is $2,000. Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $8,993.76, consisting of $6,993.76 for fees, expenses, and broker fees actually accrued, and $2,000 in anticipation of the work that will be performed for the Initial Distribution.[3] *Id.*

## VII. RECORDS RETENTION AND DESTRUCTION

Plaintiffs respectfully request the Court order that: (i) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) in no less than one (1) year

---

[3] If the anticipated fees and expenses to conduct the Initial Distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.*, ¶21(f).

## VIII.  CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that the Motion be granted.

Dated: June 7, 2021

Respectfully submitted,

*/s/ Casey E. Sadler*
Casey E. Sadler (*pro hac vice*)
Joseph D. Cohen (*pro hac vice*)
**GLANCY PRONGAY & MURRAY**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: csadler@glancylaw.com
   jcohen@glancylaw.com

*Lead Counsel for the Settlement Class*

*-and-*

Leo W. Desmond, Esquire
Florida Bar Number 0041920
**DESMOND LAW FIRM, P.C.**
5070 Highway A1A, Suite D
Vero Beach, Florida 32963
Telephone: (772) 231-9600
Facsimile: (772) 231-0300
Email: lwd@desmondlawfirm.com

*Liaison Counsel for the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Plaintiffs hereby certifies that on June 7, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this matter.

Dated:  June 7, 2021

*/s/ Casey E. Sadler*
Casey E. Sadler